## Transportation of School Pupils

GORNISH, *Attorney General*, ANDERSON, *Deputy Attorney General*, December 20, 1978— We have been asked for an opinion concerning the effect of certification by the Department of Transportation's Bureau of Traffic Safety, of a portion of a highway as a hazardous walking route under sections 1362 and 2541 of the Public School Code of March 10, 1949, P.L. 30, as amended, 24 P.S. §13-1362, 25-2541. In particular, the question is

whether such a certification requires a school district to provide free transportation to pupils who would otherwise have to use the hazardous walking route.

Section 1361 of the Public School Code, 24 P.S. §13-1361, authorizes (but does not require) school directors to provide free transportation for pupils who are residents of the school district. The section establishes a number of conditions which must be met before free transportation may be provided. For example, the pupil must be lawfully enrolled in a nonprofit school located within the district or not more than ten miles from its boundaries (except that the 10-mile limit does not apply to vo-tech schools) and nonpublic school pupils must be provided identical transportation.

Section 1362 describes the types of transportation facilities which may be utilized in providing the free transportation authorized in section 1361, namely, school conveyances, private conveyances, electric railways or other common carriers. The section also attaches certain restrictions to the free transportation, when provided, namely:

(1) No pupil shall be required to travel by public highway more than one and one-half miles to obtain access to the free transportation.

(2) Stations or other proper shelters shall be provided where needed.

(3) Highway, road or traffic conditions may not be such that walking on the shoulder where there are no sidewalks constitutes a hazard to the safety of the child, as certified by the Bureau of Traffic Safety of the Department of Transportation.

(4) All private motor vehicles shall be adequately covered by public liability insurance.

Section 2541(a) establishes a payment formula for reimbursement to school districts of a portion of the cost of providing the free transportation authorized in section 1361. Subsection (b) further delineates the payments to be made to the various types of school districts for pupil transportation and reiterates as conditions for reimbursement two of the conditions imposed on pupil transportation by section 1362, namely, the requirement that no pupil be required to travel by public highway more than one and one-half miles to obtain access to the free transportation, and the requirement that highway, road or traffic conditions must be such that walking on the shoulder where there are no sidewalks does not constitute a hazard to the safety of the child as certified by the Bureau of Traffic Safety of the Department of Transportation.

The effect of the foregoing sections of the Public School Code is, in short, that school districts are not required to provide free transportation; however, if they do provide free transportation, they must comply with the requirements of section 1361 and section 1362 and, if in compliance with the two requirements relating to access routes, they will be reimbursed under section 2541.

Under this state of the law, the question is, what is the responsibility of the school district when the Bureau of Traffic Safety determines that a particular walking route along the shoulder of a road where there are no sidewalks, is hazardous.

If there is an existing school bus route, is the school district required to extend the bus route closer to the pupils' homes in order to eliminate the hazardous walking route, or in the alternative, may it, since it is not legally required to provide free transportation in the first place, discontinue the

bus route entirely. It is our opinion that under such circumstances, the school district is required to extend the bus route in order to eliminate the hazardous walking route and it may not discontinue the bus route entirely.*

As recognized by Attorney General Israel Packel, in Official Opinion no. 56-74, 4 Pa. Bull. 2473, the authority of school directors to provide transportation services is discretionary. The directors have discretion to furnish such service to one class of students and not another (except that nonpublic school students must be treated in an identical manner). The discretionary power is not unlimited, however, and the board may not abuse its discretion or act in an arbitrary manner contrary to the public interest.

In discussing such discretionary power, the Attorney General said:

"School directors, entrusted by the Legislature with the care of pupil-passengers and the custody of public property, have the duty to take reasonable measures for the safety and protection of both. In this regard, the reasonableness of their actions is to be determined from a consideration of all the circumstances culminating in a decision to provide or deny transportation services to . . . pupils. A bare minimum of care would impose a duty to consider the safety of such pupils before considering the cost of transportation services. The purpose of school transportation laws is to provide for the safety and welfare of school children. If school directors can attest to the reasonableness of their actions, to a

---

*It is arguable, however, that the school directors could legally discontinue all transportation to the entire district.

careful consideration of their duty to all pupil-passengers in their care, and to a compelling interest in limiting the expenditure of district funds, then the conclusions can be drawn that there is no mandatory obligation on the part of school districts to provide transportation services to . . . children under the statute as written." 1974 Op. Atty. Gen. 225-226

Here, the consideration of the pupils' safety requires the school district to continue the transportation service in such a way as to eliminate the safety hazard. Discontinuing the bus route would have the opposite effect. It cannot be assumed that all pupils on a discontinued bus route can avail themselves of alternative transportation to and from school. There will inevitably be some pupils who will have to walk the entire distance to school. In any such case it can be expected that a natural walking route from the pupils' homes to the school would follow the discontinued bus route and would also include the very walking route declared by the Bureau of Traffic Safety to be hazardous. It would be ironic if the declaration of a walking route between the pupils' homes and the bus route as hazardous, would result in the pupils' continuing to walk along the hazardous route and also all the way to school.

Thus far, the discussion has been concerned with the walking route from the pupils' homes to a bus stop. The same considerations apply, however, to a hazardous walking route from home to school for pupils who live less than one and one-half miles from the school. Although the Public School Code does not require that free transportation be extended generally to pupils living within one and

one-half miles of the school, considerations of safety require the school directors, if they provide free transportation to anyone, to provide it to pupils within one and one-half miles of the school who otherwise would have to walk along a hazardous walking route.

In conclusion, it is our opinion, and you are advised, that school districts are not required by law to provide free transportation to pupils in the district, but if they provide it to some pupils, and a walking route along the shoulder of a road, either between the pupil's home and the bus route or between the pupil's home and the school if the pupil is not on a bus route, is declared by the Bureau of Motor Vehicles, Department of Transportation, to be hazardous, then the district must provide free transportation to those pupils to relieve them from the danger of having to walk along a hazardous walking route.